UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CYNTHIA J. WOLCOTT, | No.  2:15-cv-1796-CKD |
| Plaintiff, | |
| v. | ORDER |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security, | |
| Defendant. | |

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying plaintiff's application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("Act").  For the reasons discussed below, the court will deny plaintiff's motion for summary judgment and grant the Commissioner's cross-motion for summary judgment.

I.      BACKGROUND

Plaintiff, born March 30, 1964, applied for SSI benefits on June 30, 2012, alleging disability beginning January 31, 2008.  Administrative Transcript ("AT") 56, 135.  Plaintiff alleged she was unable to work due to restless leg syndrome, depression, arthritis, and anxiety.

////

////

1

AT 154.  In a decision dated March 7, 2014, the ALJ determined that plaintiff was not disabled.[1]

AT 14-25.  The ALJ made the following findings (citations to 20 C.F.R. omitted):

> 1.      The claimant has not engaged in substantial gainful activity since June 30, 2012, the application date.
>
> 2.      The claimant has the following severe impairments: degenerative disc disease (DDD) of the spine, obesity, migraine headaches, and a bipolar disorder.
>
> 3.      The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.
>
> 4.      After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional

---

[1]      Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. § 401 et seq.   Supplemental Security Income is paid to disabled persons with low income.  42 U.S.C. § 1382 et seq.  Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ."  42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A).  A parallel five-step sequential evaluation governs eligibility for benefits under both programs. See 20 C.F.R. §§ 404.1520, 404.1571-76,  416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-142 (1987).  The following summarizes the sequential evaluation:

> Step one:  Is the claimant engaging in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two.
>
> Step two:  Does the claimant have a "severe" impairment? If so, proceed to step three.  If not, then a finding of not disabled is appropriate.
>
> Step three:  Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1?  If so, the claimant is automatically determined disabled.  If not, proceed to step four.
>
> Step four:  Is the claimant capable of performing his past work?  If so, the claimant is not disabled.  If not, proceed to step five.
>
> Step five:  Does the claimant have the residual functional capacity to perform any other work?  If so, the claimant is not disabled.  If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process.  Bowen, 482 U.S. at 146 n.5.  The Commissioner bears the burden if the sequential evaluation process proceeds to step five.  Id.

capacity to perform light work as defined in 20 CFR 416.967(b) except the claimant can lift and carry 20 pounds occasionally, 10 pounds frequently, and sit, stand and walk for six hours in an eight hour day. The claimant can occasionally balance, frequently climb ramps and stairs, but cannot climb ladders, ropes or scaffolds. She should avoid extreme cold, pulmonary irritants, and hazards. She can perform simple one-two step tasks.

5.     The claimant is capable of performing past relevant work as a cashier (211.462.010) light with an SVP of 2. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity.

6.     The claimant has not been under a disability, as defined in the Social Security Act, since June 30, 2012, the date the application was filed.

AT 16-25.

## II.     ISSUES PRESENTED

Plaintiff argues that the ALJ committed the following errors in finding plaintiff not disabled: (1) improperly evaluated the medical opinion evidence in the record when determining plaintiff's residual functional capacity ("RFC"), (2) improperly relied on vocational expert ("VE") testimony that conflicted with the Dictionary of Occupational Titles when rendering his determination that plaintiff could perform her past work as a cashier at step four; and (3) improperly found plaintiff's testimony regarding the extent of her pain and symptoms to be less than fully credible.

## III.     LEGAL STANDARDS

The court reviews the Commissioner's decision to determine whether (1) it is based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in the record as a whole supports it. Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is more than a mere scintilla, but less than a preponderance. Connett v. Barnhart, 340 F.3d 871, 873 (9th Cir. 2003) (citation omitted). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007), quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted).

1  "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one

2  rational interpretation."  Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).

3     The record as a whole must be considered, Howard v. Heckler, 782 F.2d 1484, 1487 (9th

4  Cir. 1986), and both the evidence that supports and the evidence that detracts from the ALJ's

5  conclusion weighed.  See Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985).  The court may not

6  affirm the ALJ's decision simply by isolating a specific quantum of supporting evidence.  Id.; see

7  also Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  If substantial evidence supports the

8  administrative findings, or if there is conflicting evidence supporting a finding of either disability

9  or nondisability, the finding of the ALJ is conclusive, see Sprague v. Bowen, 812 F.2d 1226,

10  1229-30 (9th Cir. 1987), and may be set aside only if an improper legal standard was applied in

11  weighing the evidence.  See Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

12  IV.     ANALYSIS

13          A.  *The ALJ did not err in Considering the Medical Opinion Evidence*

14     First, plaintiff argues that the ALJ erred by failing to specifically address and weigh the

15  opinion of plaintiff's treating psychiatrist, Dr. Nguyen.  Plaintiff also argues that the ALJ

16  improperly accorded "significant weight" to the non-examining opinions of Dr. Campbell and Dr.

17  Caruso-Radin because he did not also incorporate into his RFC determination some of the

18  "moderate" work-related limitations assessed by those physicians.

19     To evaluate whether an ALJ properly rejected a medical opinion, in addition to

20  considering its source, the court considers whether (1) contradictory opinions are in the record,

21  and (2) clinical findings support the opinions.  An ALJ may reject an uncontradicted opinion of a

22  treating or examining medical professional only for "clear and convincing" reasons.  Lester, 81

23  F.3d at 831.  In contrast, a contradicted opinion of a treating or examining professional may be

24  rejected for "specific and legitimate" reasons that are supported by substantial evidence.  Id. at

25  830.  While a treating professional's opinion generally is accorded superior weight, if it is

26  contradicted by a supported examining professional's opinion (e.g., supported by different

27  independent clinical findings), the ALJ may resolve the conflict.  Andrews v. Shalala, 53 F.3d

28  1035, 1041 (9th Cir. 1995) (citing Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)).  In

4

any event, the ALJ need not give weight to conclusory opinions supported by minimal clinical findings.  Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir.1999) (treating physician's conclusory, minimally supported opinion rejected); see also Magallanes, 881 F.2d at 751.  The opinion of a non-examining professional, without other evidence, is insufficient to reject the opinion of a treating or examining professional.  Lester, 81 F.3d at 831.

With regard to Dr. Nguyen, plaintiff argues that the ALJ improperly failed to address and weigh his opinion that plaintiff had a Global Assessment of Functioning ("GAF")[2] score of 45, which indicated that plaintiff had "serious" symptoms stemming from her mental impairments. However, "a GAF score is merely a rough estimate of an individual's psychological, social, or occupational functioning used to reflect an individual's need for treatment, but it does not have any direct correlative work-related or functional limitations."  Hughes v. Colvin, 599 F. App'x 765, 766 (9th Cir. 2015) (citing Vargas v. Lambert, 159 F.3d 1161, 1164 n.2 (9th Cir. 1998)). Accordingly, the ALJ was not required to consider and weigh the GAF score assessed by Dr. Nguyen as if it were that physician's opinion regarding the claimant's work-related functional limitations.  See id. (holding that the ALJ did not err in failing to address a GAF score from the plaintiff's treating psychiatric nurse practitioner when determining the plaintiff's RFC).

Outside of the GAF score provided in Dr. Nguyen's August 12, 2012 treatment notes, which did not constitute an opinion the ALJ was required to weigh, plaintiff fails to point to any other aspect of Dr. Nguyen's treatment records that could be construed as providing an opinion on the specific work-related functional limitations caused by plaintiff's impairments.  As the ALJ noted, Dr. Nguyen's treatment notes "did not identify any functional mental limitations" and the record contains no opinions from any of plaintiff's treating physicians regarding her mental impairments.  AT 24-25.  In short, plaintiff fails to demonstrate that the ALJ ignored any functional opinion provided by Dr. Nguyen when determining plaintiff's RFC.

/////

---

[2] GAF is a scale reflecting "psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness."  Diagnostic and Statistical Manual of Mental Disorders 34 (4th ed. 2000).

1    Furthermore, although plaintiff makes much of the fact that Dr. Nguyen at the August 12,

2    2012 appointment assessed a GAF score of 45, GAF scores are not dispositive in social security

3    cases. <u>Trinchere v. Astrue</u>, 2008 WL 4395283, at *6 (C.D. Cal. Sept. 3, 2008).  A low GAF score

4    does not alone determine disability, but is a piece of evidence to be considered with the rest of the

5    record. <u>Olds v. Astrue</u>, 2008 WL 339757, at *4 (D. Kan. Feb. 5, 2008) (citation omitted).  An

6    ALJ is permitted to discredit a GAF score where it is unsupported by objective evidence.  <u>Clark v.</u>

7    <u>Astrue</u>, 2009 WL 542166, at *6 (C.D. Cal. Mar. 4, 2009).  Here, the ALJ specifically considered

8    Dr. Nguyen's August 12, 2012 treatment notes, including the assessed GAF score of 45, when

9    determining plaintiff's RFC.  AT 20-21.  Moreover, the ALJ determined that the evidence in the

10   record, including the opinions of plaintiff's examining and non-examining physicians, the

11   minimal findings in plaintiff's treatment records, including those provided by Dr. Nguyen, and

12   the lack of treatment plaintiff received for impairments, supported the ALJ's RFC findings that

13   were less severe than what Dr. Nguyen's GAF score may have suggested.  AT 24-25.  Plaintiff

14   fails to show how the ALJ's RFC determination in light of that evidence was in error.

15   Plaintiff also argues that the ALJ erred by assigning "significant weight" to the opinions

16   of Dr. Campbell and Dr. Caruso-Radin but not adopting some of the "moderate" mental

17   limitations those physicians opined as part of the ALJ's overall RFC determination.  Plaintiff

18   contends that the sole mental limitation contained within the ALJ's RFC determination—that

19   plaintiff could perform only simple one-two step tasks—does not adequately reflect the moderate

20   mental limitations opined by these two physicians.  Accordingly, plaintiff asserts, the ALJ tacitly

21   rejected the moderate work-related mental limitations opined by Dr. Campbell and Dr. Caruso-

22   Radin without providing any reasons for doing so, thus resulting in prejudicial error.

23   The Ninth Circuit Court of Appeals has noted that an ALJ may synthesize and translate

24   assessed limitations into an RFC assessment without repeating each functional limitation

25   verbatim in the RFC assessment.  <u>Stubbs-Danielson v. Astrue</u>, 539 F.3d 1169, 1173-74 (9th Cir.

26   2008); <u>see also</u> 20 C.F.R. § 404.1545 (defining RFC as "the most you can still do despite your

27   limitations").  In this case, plaintiff's RFC appears to adequately capture the functional limitations

28   assessed by Dr. Campbell and Dr. Caruso-Radin.

With regard to plaintiff's mental impairments, Dr. Campbell opined that plaintiff was "moderately limited" in her abilities to maintain attention and concentration for extended periods; perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; complete a normal workday and workweek without interruptions; and perform at a consistent pace.  AT 82.  Dr. Campbell opined further that plaintiff was not significantly limited in any other aspect of mental functioning.  Id.  Dr. Campbell also clarified that plaintiff's moderate mental limitations would translate into an ability to "learn and remember basic work instructions and tasks of 1-2 steps"; "follow a schedule, make decisions and complete basic work tasks on a consistent basis"; "work around others"; and "adapt to changes and handle the normal stressors of full time employment."  Id.  Finally, he opined that plaintiff "can meet the expectations of full time employment doing basic work tasks" given the mental limitations he assessed.  Id.

Similar to Dr. Campbell, Dr. Caruso-Radin opined that plaintiff was "moderately limited" in her abilities to maintain attention and concentration for extended periods, complete a normal workday and workweek without interruptions, and perform at a consistent pace.  AT 68.  Unlike Dr. Campbell, Dr. Caruso-Radin also opined that plaintiff was "moderately limited" in her ability to carry out detailed instructions, but that she was not significantly limited with regard to her ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances.  Id.  Furthermore, Dr. Caruso-Radin clarified that the moderate concentration and persistence limitations she opined demonstrate that plaintiff "can understand, remember, and carry out a two-step command involving simple instructions and maintain [concentration, persistence, or pace] for such."  Id.  She also clarified that "[a]lthough [plaintiff] might have difficulty sustaining attention over extended periods, [plaintiff] could sustain [concentration, persistence, or pace] up to 4 h[ou]r increments with customary work breaks and is able to complete usual workday/week."  Id.

/////

/////

/////

7

1    Based on the above findings by Dr. Campbell and Dr. Caruso-Radin, it is clear that the

2  ALJ's determination that plaintiff is limited to "simple one-two step tasks" adequately

3  encompassed those physicians' opinions regarding plaintiff's mental limitations.  Despite finding

4  that plaintiff was moderately limited in several areas of workplace mental functioning, both Dr.

5  Campbell and Dr. Caruso-Radin ultimately opined that plaintiff was limited only to carrying out

6  simple one-to-two step tasks.  AT 68, 82.  Indeed, both physicians specifically found that plaintiff

7  could still perform basic work tasks on a consistent basis and meet the expectations of full time

8  employment on a consistent day-to-day and week-to-week basis.  Id.  The ALJ's RFC

9  determination limiting plaintiff to simple one-two step tasks reflected exactly these physicians'

10  opinions regarding the impact plaintiff's mental impairments would have on her ability to

11  perform work-related tasks.  Accordingly, the ALJ did not err in weighing the opinions of these

12  two physicians in the manner he did when determining plaintiff's RFC.

13  B. *The ALJ did not err in Relying on the VE's Testimony to Determine that Plaintiff*

14  *Could Perform her Past Work as a Cashier at Step Four*

15    Second, plaintiff argues that the ALJ erred by relying on the VE's testimony to support his

16  step four determination that plaintiff could perform her prior work as a cashier in light of her RFC

17  because the VE's testimony conflicted with the Dictionary of Occupational Titles ("DOT").[3]

18  More specifically, plaintiff contends that the VE's statement that a person with the same

19  limitations as those contained within plaintiff's RFC could perform plaintiff's past work as a

20  cashier was in direct conflict with the DOT's Level 3 Reasoning[4] requirement for that occupation

21  _____

[3] The United States Dept. of Labor, Employment & Training Admin., Dictionary of Occupational

22  Titles (4th ed. 1991), ("DOT") is routinely relied on by the Social Security Administration "in
determining the skill level of a claimant's past work, and in evaluating whether the claimant is

23  able to perform other work in the national economy."  Terry v. Sullivan, 903 F.2d 1273, 1276
(9th Cir. 1990).  The DOT classifies jobs by their exertional and skill requirements.   The DOT is

24  a primary source of reliable job information for the Commissioner.  20 C.F.R. §§ 404.1566(d)(1),
416.966(d)(1).

25

26  [4] The DOT breaks jobs into six GED Reasoning Levels that range from Level 1 (simplest) to
Level 6 (most complex).  DOT (4th ed. 1991), App. C, § III, 1991 WL 688702.  Level 3

27  Reasoning requires a worker to "[a]pply commonsense understanding to carry out instructions
furnished in written, oral, or diagrammatic form [and d]eal with problems involving several

28  concrete variables in or from standardized situations."

1    in light of plaintiff's RFC limitation to "simple one-two step tasks."  In support of her argument,

2    plaintiff cites to the Ninth Circuit Court of Appeals' opinion in <u>Zavalin v. Colvin</u>, 778 F.3d 842

3    (9th Cir. 2015), wherein the Court held that "that there is an apparent conflict between the

4    residual functional capacity to perform simple, repetitive tasks, and the demands of Level 3

5    Reasoning."  <u>Id.</u> at 847.  In that case, the Court determined that the ALJ was required to reconcile

6    this apparent conflict before the ALJ could rely on VE testimony that the claimant could work in

7    occupations requiring Level 3 Reasoning skills to support a step five determination that the

8    claimant could perform such work as it appears in the national economy.  <u>Id.</u> at 843-44.  Plaintiff

9    asserts that the ALJ never properly reconciled the conflict between the VE's testimony indicating

10   that plaintiff could perform her past work as a cashier, which the DOT states has a Level 3

11   Reasoning requirement, and plaintiff's limitation to simple one-two step tasks before using the

12   VE's testimony in support of his step four determination that plaintiff could perform her prior

13   work as a cashier.

14         Plaintiff's argument is not well taken, however, because the ALJ here utilized the VE's

15   testimony to support his step four determination that plaintiff could perform her past work as a

16   cashier as she actually performed it, unlike the ALJ in <u>Zavalin</u>, who used the VE's testimony to

17   support a step five determination that the plaintiff could perform other work as it is generally

18   performed in the national economy.  This distinction is crucial because different standards govern

19   an ALJ's step four determination than those that govern a determination at step five.  While an

20   ALJ at step four may determine that the claimant can perform his or her past work as it is

21   generally performed within the national economy—which is similar to step five's requirement

22   that the ALJ find the claimant can perform other work that exists in significant numbers in the

23   national economy—the ALJ may alternatively find the claimant not disabled on the basis that he

24   or she could perform his or her past work as it was actually performed.  20 C.F.R. §

25   416.960(b)(2).  Furthermore, the claimant has the burden of showing that he or she cannot

26   perform his or her prior work at step four, while the ALJ has the burden to prove that there exists

27   other work in sufficient numbers within the national economy that the claimant can perform given

28   his or her limitations.  <u>Bowen</u>, 482 U.S. at 146, n.5.  These differences indicate that the Ninth

1    Circuit Court of Appeals' ruling in Zavalin does not necessarily require the ALJ to reconcile an

2    apparent conflict between the VE's testimony and the DOT in order to rely on the VE's testimony

3    in support of a step four determination that the claimant can perform his or her past work under

4    circumstances similar to those presented in this action.

5         Here, the ALJ evaluated whether plaintiff could perform her past work as a cashier as she

6    had actually performed it and as it was generally performed in the national economy.  AT 25.

7    Even assuming, without deciding, that the ALJ erred by determining that plaintiff could perform

8    her past work as a cashier as it was performed in the national economy, such an error was

9    harmless in light of the ALJ's alternative determination that plaintiff could still perform such

10   work as she actually had performed it.[5]  When determining that a claimant can perform his or her

11   prior work as it was actually performed, an ALJ is not required to consult the DOT because that

12   source addresses an occupation as it is generally performed, not as it is specifically performed by

13   the claimant.  See Pruitt v. Comm'r of Soc. Sec., 612 F. App'x 891, 894 (9th Cir. 2015) (citing

14   Pinto v. Massanari, 249 F.3d 840, 845 (9th Cir. 2001)) ("[I]t is irrelevant that the Dictionary of

15   Occupational Titles states that receptionists must frequently reach but the ALJ found that Pruitt

16   could only occasionally reach.  The ALJ was evaluating whether Pruitt could perform her work as

17   she actually performed it—with only occasional reaching—and not as it is generally

18   performed."); Johnson v. Colvin, 623 F. App'x 326, 327 (9th Cir. 2015) (quoting SSR 82-61)

19   (holding that an ALJ did not err by not consulting the DOT to determine whether the claimant

20   could perform his past relevant work at step four because "[a]n ALJ can find the claimant not

21   disabled at step four by finding *either* that the claimant retains the capacity 'to perform the

22   particular functional demands and job duties peculiar to an individual job as he or she actually

23   _____

24   [5] While the Ninth Circuit Court of Appeals has not addressed whether an ALJ is required to
     resolve an apparent conflict between a VE's testimony and the DOT with regard to the step four
25   inquiry into whether a claimant can perform his or past work as it is generally performed in the
     national economy, it appears that the Court's reasoning in Zavalin would also apply to such a
26   scenario.  However, the court does not address this issue at this time because, even assuming,
     without deciding, that the ALJ erred in relying on the VE's testimony that plaintiff could perform
27   her past work as it was generally performed, such an error was harmless, because the ALJ
     properly determined that plaintiff could still perform her past work as she actually performed it
28   for the reasons discussed below.

1    performed it' or 'the job as ordinarily required by employers throughout the national economy.'"

2    (emphasis in original)).

3         The existence of an apparent conflict between a VE's testimony that the claimant can

4    perform his or her prior occupation and that occupation's DOT listing may be irrelevant to the

5    issue of whether the claimant can still perform work as he or she actually performed it because

6    the DOT's requirements may not match what the claimant actually did while working in that

7    position.  Accordingly, the fact that the Ninth Circuit Court of Appeals has found an apparent

8    conflict between an ability to perform only simple one-two step tasks and occupations requiring

9    Level 3 Reasoning does not necessarily mean that the ALJ here erred in relying on the VE's

10   testimony to determine that plaintiff could perform her prior work as a cashier as she actually

11   performed it.  See AT 25, 52-53.  An ALJ may consult a VE to aid in making a step four

12   determination and use a VE's testimony as evidence of whether the claimant can perform his or

13   her past work.  20 C.F.R. § 416.960(b)(2).  Therefore, the ALJ's use of such evidence in support

14   of his step four determination was proper.[6]  See id.

15        Moreover, in addition to relying on the VE's testimony, the ALJ also took into

16   consideration plaintiff's own reports regarding how she performed her past work as a cashier.  AT

17   25.  A review of plaintiff's own description of her past work as a cashier provides substantial

18   support for the VE's testimony and the ALJ's determination that plaintiff could perform such

19   work given her RFC limitation to simple one-two step tasks.  See AT 192-93, 195.  In short, the

20   ALJ relied on substantial evidence in the record in rendering his step four determination that

21   plaintiff could perform her past work as a cashier as she actually had performed that occupation.

22   Thus, plaintiff's argument that the ALJ erred at step four is without merit.

23   /////

24   /////

25   /////

26   _____

27   [6] Furthermore, while the ALJ was not required to consult the DOT in making his step four
     determination, he also asked the VE during the hearing whether there was any conflict between
     the DOT's requirements and the VE's testimony, to which the VE responded that such a conflict
28   did not exist.  AT 54.

C. *The ALJ's Adverse Credibility Determination was Proper and Supported by*
*Substantial Evidence from the Record*

Finally, plaintiff argues that the ALJ improperly found plaintiff's testimony regarding the extent of her symptoms arising from her mental impairments to be less than fully credible.[7]

The ALJ determines whether a disability applicant is credible, and the court defers to the ALJ's discretion if the ALJ used the proper process and provided proper reasons.  See, e.g., Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1995).  If credibility is critical, the ALJ must make an explicit credibility finding.  Albalos v. Sullivan, 907 F.2d 871, 873-74 (9th Cir. 1990); Rashad v. Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990) (requiring explicit credibility finding to be supported by "a specific, cogent reason for the disbelief").

In evaluating whether subjective complaints are credible, the ALJ should first consider objective medical evidence and then consider other factors.  Bunnell v. Sullivan, 947 F.2d 341, 344 (9th Cir. 1991) (en banc).  If there is objective medical evidence of an impairment, the ALJ then may consider the nature of the symptoms alleged, including aggravating factors, medication, treatment and functional restrictions.  See id. at 345-47.  The ALJ also may consider: (1) the applicant's reputation for truthfulness, prior inconsistent statements or other inconsistent testimony, (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment, and (3) the applicant's daily activities.  Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996); see generally SSR 96-7p; SSR 95-5p; SSR 88-13.  Work records, physician and third party testimony about nature, severity and effect of symptoms, and

---

[7] Plaintiff's arguments regarding the ALJ's treatment of plaintiff's testimony all center on the ALJ's decision to discount plaintiff's testimony regarding the extent of her symptoms arising specifically from her mental impairments.  Plaintiff does not appear to contest the ALJ's treatment of her testimony regarding the extent of her pain and symptoms caused by her physical impairments.  Accordingly, the court does not address in detail the ALJ's reasons used to support his decision to discount plaintiff's pain and symptom testimony arising from her physical impairments.  See Carmickle v. Comm'r, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008) (the court need not address an issue where the claimant "failed to argue [the] issue with any specificity in [his or her] briefing.").  Nevertheless, a review of the ALJ's reasoning and the rest of the record shows that the ALJ's reasoning in support of his adverse credibility determination regarding plaintiff's pain and symptom testimony concerning her physical impairments were clear and convincing reasons supported by substantial evidence.

1  inconsistencies between testimony and conduct also may be relevant.  Light v. Social Security

2  Administration, 119 F.3d 789, 792 (9th Cir. 1997).  A failure to seek treatment for an allegedly

3  debilitating medical problem may be a valid consideration by the ALJ in determining whether the

4  alleged associated pain is not a significant non-exertional impairment.  See Flaten v. Secretary of

5  HHS, 44 F.3d 1453, 1464 (9th Cir. 1995).  The ALJ may rely, in part, on his or her own

6  observations, see Quang Van Han v. Bowen, 882 F.2d 1453, 1458 (9th Cir. 1989), which cannot

7  substitute for medical diagnosis.  Marcia v. Sullivan, 900 F.2d 172, 177 n.6 (9th Cir. 1990).

8  "Without affirmative evidence showing that the claimant is malingering, the Commissioner's

9  reasons for rejecting the claimant's testimony must be clear and convincing."  Morgan v.

10  Commissioner of Social Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999).

11        Here, the ALJ discounted plaintiff's testimony regarding the extent of the symptoms

12  arising from her mental impairments for the following reasons:

> Turning now to her mental complaints, the undersigned could not
> find them entirely credible as the SA determined she could perform
> simple routine tasks (unskilled work), and the overall record failed
> to support that her ability to perform the basic mental demands of
> unskilled work had been substantially eroded.
>
> Treating mental health records did not fully support her mental
> complaints as she was not diagnosed with an anxiety disorder and
> the most common findings upon MSE were a depressed/irritable
> mood and restricted affect.  Those records did not indicate she had
> to be hospitalized or had any 5150 mental health admissions, and
> did not contain evidence of individual or group therapy.  There
> were no specific findings that she was forgetful, had problems
> concentrating, or had difficulty getting along with office or mental
> health professionals.  Dr. Nguyen, treating psychiatrist, did not
> identify any functional mental limitations, and his records did not
> indicate he was treating her on a weekly or monthly basis.  Rather
> his treatment was approximately every three months (the claimant
> testified to seeing her psychiatrist every three months) which is
> clearly not indicative of a disabling mental impairment, and he
> indicated that her bipolar disorder was of moderate severity.
>
> The only mental abnormalities noted by Dr. Fernando during the
> CE was that she looked depressed and that she reported having
> some suicidal thoughts, but treating mental health and non-mental
> health treating sources contained no evidence she was suicidal or

reported being suicidal.  The record was devoid of evidence that she
sought emergency room treatment for her mental complaints or
United Way organizations or psychiatrically hospitalized.

Lastly, no mental problems were perceived when she filed her
application, and she indicated in her application that she did not
need help with personal care, hygiene or upkeep of a home.

These factors led the undersigned to find her mental complaints
partially credible.

AT 24 (citations omitted).  For the reasons discussed below, this rationale was proper and
supported by substantial evidence from the record.

First, the ALJ properly determined that the care plaintiff received for her mental
impairments was not commensurate with the degree of symptoms she claimed.  See Burch v.
Barnhart, 400 F.3d 676, 681 (9th Cir. 2005); SSR 96-7p ("[T]he individual's statements may be
less credible if the level or frequency of treatment is inconsistent with the level of complaints . . .
.").  As the ALJ noted, plaintiff received only minimal and relatively sporadic mental health
treatment.  Indeed, the record shows that plaintiff visited her primary psychiatric physician only
roughly every three months and received mental health care only in the form of psychotropic
medications, with no further recommendations for other forms of treatment.  AT 263-69, 298-99,
323-27.  There is no indication that plaintiff's physicians ever recommended that plaintiff
undergo more advanced treatment for her mental impairments or that plaintiff ever sought
additional treatment.

Plaintiff argues that the ALJ improperly focused on the fact that there was no evidence
that plaintiff had a 5150 admission or had otherwise been hospitalized due to her mental
impairments, attended mental therapy sessions, or contacted a mental health crisis center.
Plaintiff contends that she was not required to show that she had met these criteria before her
mental symptom testimony could be deemed credible.  While plaintiff is correct that she did not
need to provide evidence of such treatment before her testimony indicating that her impairments
rendered her disabled could be deemed believable, her argument misses the point that the ALJ
was permitted to rely on the fact that plaintiff received only minimal mental health treatment in

14

1    support of his adverse credibility determination.  In listing the above forms of treatment, the ALJ

2    merely illustrated that plaintiff did not receive a degree of mental health treatment that would

3    support the level of symptom severity her testimony suggested.

4           Second, the ALJ determined that the objective evidence in the record undermined

5    plaintiff's claims that her mental impairments were as severe as she alleged.  The medical

6    opinions of Dr. Campbell, Dr. Caruso-Radin, and Dr. Fernando, an examining physician who

7    opined on plaintiff's physical limitations, all of which the ALJ accorded "significant weight,"

8    directly conflicted with plaintiff's claims of disabling symptoms and pain.  AT 64-69, 78-82, 272-

9    79.  Although lack of medical evidence cannot form the sole basis for discounting plaintiff's

10   subjective symptom testimony, it was nevertheless a relevant factor for the ALJ to consider.

11   Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005).  Accordingly, in light of the other clear and

12   convincing reasons set forth both above and below, the ALJ did not err in considering the fact

13   that plaintiff's testimony was not supported by the objective medical evidence in the record as an

14   additional reason to discount plaintiff's testimony.

15          Finally, the ALJ also reasoned that plaintiff's testimony regarding the extent of her mental

16   impairments was inconsistent with her prior statements regarding her impairments and symptoms.

17   Such a rationale was a proper reason for discounting plaintiff's testimony regarding the extent of

18   her mental impairments.  Smolen, 80 F.3d at 1284 (noting that an ALJ may consider "the

19   claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other

20   testimony by the claimant that appears less than candid" in determining whether the claimant's

21   testimony is credible).  Furthermore, the record here provides substantial evidence in support of

22   the ALJ's reasoning.  As the ALJ noted, plaintiff noted in her initial application for SSI that she

23   did not need help in personal care, hygiene, or upkeep of her home, AT 137, but later testified

24   that she needed assistance performing many basic daily activities, such as preparing meals,

25   showering, and cleaning, and could not perform personal hygiene tasks due to her depression, AT

26   40, 43.  Accordingly, the ALJ properly considered plaintiff's inconsistent statements as a reason

27   for discounting her testimony.

28   /////

1    Because the ALJ provided multiple clear and convincing reasons for discounting

2    plaintiff's testimony regarding the extent of the symptoms stemming from her mental

3    impairments, the ALJ did not err in rendering his adverse credibility determination.

4    For the reasons stated herein, IT IS HEREBY ORDERED that:

5    1. Plaintiff's motion for summary judgment (ECF No. 17) is denied;

6    2. The Commissioner's cross-motion for summary judgment (ECF No. 21) is granted;

7    and

8    3. Judgment is entered for the Commissioner.

9    Dated:  June 30, 2016

10   _____
     CAROLYN K. DELANEY
11   UNITED STATES MAGISTRATE JUDGE

12   11 wolcott1796.ss

16